

1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006
202-955-0095 / @BecketLaw
www.becketlaw.org

December 4, 2023

VIA CM/ECF

Nwamaka Anowi, Clerk of Court
United States Court of Appeals for the Fourth Circuit
Lewis F. Powell, Jr. United States Courthouse Annex
1100 East Main Street, Suite 501
Richmond, VA 23219-3517

**Re:** *Billard v. Charlotte Catholic High School*, **No. 22-1440**
    **Response to Rule 28(j) Notice of Supplemental Authority**

   *McMahon v. World Vision, Inc.*, No C21-920 (W.D. Wash. Nov. 28, 2023) ("*McMahon*") ("Op.")

Dear Ms. Anowi:

   Billard again seeks support from *McMahon*. But *McMahon* is both wrong and distinguishable.

   *McMahon* is wrong about Title VII's religious exemption because it ignores Title VII's definition of religion, the exemption's structure, and the parallel alien exemption. These confirm the exemption isn't limited to "religious discrimination claims" (Op.22), but also allows religious employers "to terminate an employee whose conduct or religious beliefs are inconsistent with those of its employer." *Kennedy*, 657 F.3d at 192; *accord Starkey*, 41 F.4th at 946-47 (Easterbrook, J., concurring).

   *McMahon* is wrong about expressive association because that doctrine doesn't evaporate in "the employment discrimination context." Op.43-45. Nor is it limited to employees who act against the employer's "very mission" (*id.*)—although Billard did that here. A contrary ruling would split with multiple courts, including the Second Circuit. *Slattery*, 61 F.4th at 288.

   *McMahon* is also distinguishable under the ministerial exception. According to the district court, McMahon applied to work at a multibillion-dollar aid organization as a "customer service representative," tasked with answering phone calls, data entry, and upselling programs. Op.32. Even then, the court treated the ministerial-



1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006
202-955-0095 / @BecketLaw
www.becketlaw.org

exception defense as a close question, because such employees could voluntarily "perform a uniquely important religious function…by praying with donors if comfortable and when appropriate." Op.31. Here, by contrast, Billard held "the critical and unique role of [a] teacher in fulfilling the mission of a church-operated school," *Catholic Bishop*, 440 U.S. at 501, 504, and was expressly tasked with modeling the Catholic faith, teaching drama "in a way agreeable with Catholic…though[t]," and praying with students in every class (which he did). Br.15, Reply 16.

This case turns on the confluence of two facts: (1) Billard was a teacher at a religious school; and (2) he was dismissed for the admittedly non-pretextual reason that he violated church teaching. The first fact supports the ministerial exception. The second triggers Title VII's religious exemption. Both together make this an easy case under church autonomy and expressive association. The Court can take its pick.

But when both facts have been present, no circuit has ever ruled against a religious school.

                              Sincerely,

                              */s/ Luke W. Goodrich*

| | |
|---|---|
| JOSHUA DANIEL DAVEY, ESQ. | LUKE W. GOODRICH |
| Troutman Pepper Hamilton | NICHOLAS R. REAVES |
|   Sanders LLP | LAURA WOLK SLAVIS |
| 301 South College Street | The Becket Fund for |
|   34th Floor |   Religious Liberty |
| Charlotte, NC 28202 | 1919 Pennsylvania Ave. N.W., |
| (704) 916-1503 |   Ste. 400 |
| joshua.davey@troutman.com | Washington, DC 20006 |
| | (202) 955-0095 |
| | lgoodrich@becketlaw.org |

                      *Counsel for Defendants-Appellants*

Word Count: 346